DECISION AND JUDGMENT ENTRY
{¶ 1} Andre Reine appeals the Scioto County Common Pleas Court's judgment, which found him guilty of one count of possession of a deadly weapon while under detention and two counts of harassment by an inmate. On appeal, Reine contends that because the state presented no physical evidence and had a lack of direct evidence to prove the two counts of harassment by an inmate, insufficient evidence supported these convictions and the convictions are also against the manifest weight of the evidence. Because, after viewing the evidence and all inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all essential elements of the two *Page 2 
offenses beyond a reasonable doubt, and because substantial evidence supports the two convictions, we disagree. Reine next contends that the trial court erred by ordering him restrained during the trial. Because Reine waived all but plain error, and because we do not find any error, let alone plain error, we disagree. Reine next contends that trial counsel rendered ineffective assistance of counsel by (1) deferring to his wishes on various decisions, such as declining to object to the use of restraints, withdrawing a motion to exclude certain evidentiary reports, and declining to file a motion to recuse the trial judge and the prosecutor; (2) failing to file a request for a hearing regarding Reine's competency; (3) failing to file a motion to request the court to inquire into Reine's sanity; (4) failing to file a not guilty by reason of insanity plea; and (5) failing to object to his testimony on cross-examination regarding his prior convictions. Because Reine did not overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy, we disagree. Reine next contends that the trial court erred by sua sponte failing to inquire into his competency. Because the record does not document Reine's inability to rationally make decisions on his own, we disagree. Reine next contends that the prosecutor improperly vouched for a witness's credibility during closing arguments. Because Reine cannot demonstrate prejudice resulting from the allegedly improper comment, we disagree. *Page 3 
 {¶ 2} Reine next contends that the jury's verdicts are inconsistent because it found him guilty of one count of possession of a deadly weapon but acquitted him of the felonious assault charge and the second count of possession of a deadly weapon while under detention. Because, inconsistency between the several counts of a multi-count indictment is not the type of inconsistency that warrants setting aside a jury's verdict, we disagree.
 {¶ 3} Reine finally contends that multiple errors occurred during trial that deprived him of a fair trial. Because Reine has failed to demonstrate that multiple errors occurred during the trial, we disagree. Accordingly, we overrule all seven of Reine's assignments of error and affirm the judgment of the trial court.
 I. {¶ 4} In early 2006, Southern Ohio Correctional Facility (SOCF) officers responded to Reine's cell to investigate whether he reacted inappropriately to the inmate porter who delivered his breakfast. When the officers responded to his cell, Reine threw toilet water on one officer, an unknown liquid on a second officer, and spat on a third officer. During a subsequent cell extraction, Reine grabbed two battery casings and used one to injure an officer.
 {¶ 5} The Scioto County Grand Jury returned an indictment charging Reine with six separate offenses and one specification. It indicted him for one count of felonious assault, in violation of R.C. 2903.11(A)(1); two *Page 4 
counts of possession of a deadly weapon while under detention, in violation of R.C. 2923.13; three counts of harassment by an inmate, in violation of R.C. 2921.38(A); and one repeat violent offender specification.
 {¶ 6} Before trial, the court held a security hearing. The state called SOCF Corrections Officer Scott Phipps to testify. He stated that he escorts Reine to court and believes that Reine presents a security risk. On cross-examination, defense counsel asked why the officer believed Reine posed a security risk, to which he responded that he heard Reine "threaten the judge and the prosecutor that they would not make it to 2007." She asked whether Reine made any overt action, and the officer stated "no," and he "would like to keep it that way." The state also presented an affidavit from SOCF Deputy Warden Donald Morgan in which he stated that Reine is a security problem at the institution. The warden averred that Reine is classified as a maximum-security inmate, which means that he "has demonstrated physical/predatory behavior resulting in physical harm/injury to any person."
 {¶ 7} The court ordered Reine restrained during the trial court proceedings. The court observed that Reine's current incarceration constituted one of the elements of the offenses for which he would stand trial. It thus reasoned that the jury would discover that Reine was a prisoner and that restraining Reine carried little risk of prejudice. Defense counsel advised the court that she discussed the matter with Reine and *Page 5 
that "he wishes to take no position on this matter and does not wish to make any further objections in regards to the restraint hearing."
 {¶ 8} Also before trial, defense counsel informed the court that she filed a motion to exclude certain evidentiary reports that the state allegedly failed to provide to her. As she and the prosecutor exchanged arguments, Reine interrupted her and requested her to withdraw the objection. The court asked Reine if he withdrew the objection, to which he stated, "Yeah, yeah, we withdraw them and they can use whatever they want." Defense counsel stated that she had "no further arguments as [Reine] has instructed me to withdraw, against my objection, I will note. That is against my objection."
 {¶ 9} Defense counsel then consulted with Reine and advised the court: "Your Honor, after consultation with my client, earlier I was going to ask for the recusal of yourself and of Mr. Hale being in charge of this trial in regards to future charges that may result as of his statements that he made last week during the pretrial; however, he has asked me not to make that motion. I just want to put that on the record that that's also against my advice; just so that he can't come back later and say that there were motions and things that should have been appropriate at trial and so I am not going to make that motion at this time; against my advice though." The court then asked Reine if that was his desire. Reine responded, "Yeah, I just want to get it over with man. I don't expect a fair *Page 6 
trial anyway, you hear me, so let's just go on ahead. The Lord is protecting me. He is going to defend me. I am cool. Flat out."
 {¶ 10} At trial, Ohio State Highway Patrol Sergeant Barry Call testified that he interviewed Reine following the early 2006 incident. Reine told him that Officer Corey Bennington refused to allow him to shower and then he got into an argument with the inmate porter. According to Reine, the porter threw the food tray onto Reine. The porter told Officer Bennington that Reine had thrown some type of water or fluid onto the food tray. Officer Bennington told the porter "to go ahead and secure." When Officer Bennington "came back down the range, [Reine] * * * threw toilet water on Officer Bennington." Officer Bennington "left the range" and then Sergeant Jason Smith and Captain Michael Oppy responded to Reine's cell to secure him. When Sergeant Smith and Captain Oppy arrived, Reine threw toilet water on Sergeant Smith. Sergeant Call testified that Reine admitted that he spat on Captain Oppy. Sergeant Call stated that Reine claimed that he had two battery casings, which he fashioned into weapons for self-defense. Reine admitted to Sergeant Call that he used one of the battery casings to cut a member of the cell extraction team. Sergeant Call stated that BCI found dried blood on one of the battery casings. Sergeant Call determined that the battery casings were weapons and that Reine used them as weapons in this incident.
 {¶ 11} Officer Bennington testified that Reine threw an unknown liquid substance on him. Sergeant Smith likewise testified that Reine threw a *Page 7 
cup of liquid at him, which Sergeant Smith thought smelled like urine. Captain Oppy testified that Reine threw a cup of liquid into Sergeant Smith's face and that Reine spit on him.
 {¶ 12} Sergeant Shannon Bear, a member of the cell extraction team, testified that he saw Reine spit on Captain Oppy. He stated that after the team secured Reine, the officers discovered one battery casing in Reine's hand.
 {¶ 13} BCI Forensic Scientist Beth Weisenberger testified that she tested Sergeant Smith's and Officer Bennington's shirts. She stated that test results indicated the presence of urine on the shirt that Sergeant Smith wore, but none on the shirt that Officer Bennington wore. The tests indicated no evidence of saliva or other bodily substances on the shirts.
 {¶ 14} Reine testified in his defense. His attorney asked him if he would like to tell the jury anything about the incident and Reine stated: "It's Satan. You don't see him moving. You don't see him moving but he is there, I swear to God. I am not, I may sound crazy to you but would you be crazy is you literally had a real live dude, a real live demon, Satan, really after you your whole 22 years he's been stabbing me in the back, I am talking about literally after me. I am talking about my every move. I don't go no where without this guy checking up on me and messing around me, man, I ain't crazy. I am not even going to lie. This guy, I have spent 22 years, man, dealing with this dude. 22 years." Reine also related his belief that the prison guards are attempting to poison him. On *Page 8 
cross-examination, the prosecutor questioned the reason for his current confinement. Reine stated that he is in prison for aggravated robbery, aggravated burglary, and kidnapping.
 {¶ 15} The jury subsequently found Reine (1) not guilty of felonious assault; (2) guilty of one count of possession of a deadly weapon while under detention; (3) not guilty of the second count of possession of a deadly weapon while under detention; (4) not guilty of one count of harassment by an inmate; and (5) guilty of the remaining two counts of harassment by an inmate. The trial court subsequently sentenced Reine to ten years in prison for the offenses.
 {¶ 16} Reine appeals and raises the following seven assignments of error: "I. The appellant's conviction[s] for harassment of a corrections officer [are] not supported by sufficient evidence and are against the manifest weight of the evidence." "II. The court erred by binding the appellant during the trial." "III. Appellant's conviction must be reversed due to the ineffectiveness of counsel." "IV. The appellant was denied a fair trial due to the court's failure to inquire into the appellant's sanity, by permitting counsel to defer to the defendant in critical legal matters essential to his trial." "V. The prosecutor improperly vouched for the truthfulness of witnesses in closing argument." "VI. Appellant's conviction for possession of a deadly weapon while under detention must be reversed as inconsistent with both his acquittal for felonious assault with a deadly weapon and his acquittal on count 3 possession of a deadly weapon while under detention." "VII. Cumulative errors deprived appellant of a fair trial." *Page 9 
 II. {¶ 17} In his first assignment of error, Reine contends that insufficient evidence supports his two convictions for harassment of a corrections officer and that the convictions are against the manifest weight of the evidence. He claims that the evidence does not show that either urine or spit ever touched a corrections officer. In fact, he maintains that the state did not introduce any physical evidence of saliva striking a corrections officer or that he even threw urine at an officer.
 A. SUFFICIENCY OF THE EVIDENCE {¶ 18} When reviewing the sufficiency of the evidence, appellate courts look to the adequacy of the evidence and whether the evidence, if believed, supports a finding of guilt beyond a reasonable doubt. SeeState v. Jenks (1991), 61 Ohio St.3d 259, 273. The relevant inquiry is whether, after viewing the evidence and all inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all essential elements of the offense beyond a reasonable doubt. State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, ¶ 34; Jenks, paragraph two of the syllabus; see, also,Jackson v. Virginia (1979), 443 U.S. 307, 319.
 {¶ 19} This test raises a question of law and does not allow us to weigh the evidence. State v. Ward, Meigs App. No. 05CA13,2007-Ohio-2531, ¶ 17. Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable *Page 10 
inferences from basic facts to ultimate facts." Jackson at 319. We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact. State v. Thomas (1982),70 Ohio St.2d 79, 79-80; State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 B. MANIFEST WEIGHT OF THE EVIDENCE {¶ 20} Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence. State v. Elmore, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶¶ 43-44. In contrast to the standard we apply when reviewing sufficiency-of-the-evidence claims, when determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. See id. at ¶ 44; Thompkins, supra. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 21} Here, sufficient evidence supports Reine's convictions and they are not against the manifest weight of the evidence. *Page 11 
 {¶ 22} R.C. 2921.38(A) sets forth the elements of the offense of harassment by an inmate. The statute provides: "(A) No person who is confined in a detention facility, with intent to harass, annoy, threaten, or alarm another person, shall cause or attempt to cause the other person to come into contact with blood, semen, urine, feces, or another bodily substance by throwing the bodily substance at the other person, by expelling the bodily substance upon the other person, or in any other manner."
 {¶ 23} Reine's main dispute is with the lack of direct and physical evidence showing that he threw any bodily substance at the officers. However, it is beyond dispute that the state may use either direct or circumstantial evidence to prove the essential elements of an offense. See Jenks at 272. However, the state presented more than sufficient, and even substantial, circumstantial and direct evidence to prove that Reine threw toilet water containing urine on one of the officers and that he spat on another officer.
 {¶ 24} The circumstantial and physical evidence shows that Reine threw urine on Sergeant Smith. Captain Oppy testified that he saw Reine throw a cup of liquid in Sergeant Smith's face. Sergeant Smith also testified that Reine threw a cup of liquid that smelled like urine at him. The BCI criminalist testified that she found the presence of urine on Sergeant Smith's shirt. The combination of these facts supports the jury's finding that Reine threw a cup of liquid containing urine at Sergeant Smith. Sufficient evidence supports the jury's finding, and its finding is not against the manifest weight of the evidence. *Page 12 
 {¶ 25} Additionally, the evidence directly shows that Reine spat on Captain Oppy. Captain Oppy testified that Reine spat on him. Sergeant Bear testified that Reine spat on Captain Oppy. Sergeant Call stated that Reine admitted to him that he spat on Captain Oppy. Simply because the state did not present physical evidence showing that Reine spat on Captain Oppy does not mean that the record contains insufficient evidence to support his conviction or that his conviction is against the manifest weight of the evidence. See State v. Owens (Jan. 24, 2001), Summit App. No. 19932 (stating that the absence of corroborating physical evidence does not negate the testimony of a witness to a crime); State v. West, Franklin 06AP-11, 2006-Ohio-6259 (stating that physical evidence need not corroborate victim's testimony); State v.Frye, Ashtabula App. No. 2005-A-12, 2006-Ohio-1875 (stating that officers' direct testimony as to defendant's actions sufficiently established offense committed, despite lack of physical evidence);State v. Nix, Hamilton App. No. C-30696, 2004-Ohio-5502 (holding that state need not produce physical evidence to prove its case, if direct testimony establishes elements of the crime). Physical evidence would have merely bolstered the state's witnesses' direct testimony.
 {¶ 26} Moreover, Reine's argument overlooks that harassment by an inmate includes not only the actual physical contact with an officer of some bodily substance, but the attempt to cause an officer to come into contact with the bodily substance. The facts set forth above constitute ample evidence that Reine attempted to cause, if not in fact caused, bodily substances to come into contact with the two officers. *Page 13 
 {¶ 27} Therefore, after viewing the evidence and all inferences reasonably drawn therefrom in the light most favorable to the prosecution, we find that any rational trier of fact could have found all essential elements of the offenses beyond a reasonable doubt. Further, we find that substantial evidence upon which the trier of fact could reasonably conclude that all the elements of the offenses have been proven beyond a reasonable doubt. Consequently, we find that sufficient evidence supports the verdicts, and the verdicts are not against the manifest weight of the evidence.
 {¶ 28} Accordingly, we overrule Reine's first assignment of error.
 III. {¶ 29} In his second assignment of error, Reine contends that the trial court erred by ordering him restrained during trial.
 {¶ 30} Reine did not object to the use of restraints. Thus, he has waived all but plain error. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For a reviewing court to find plain error, the following three conditions must exist: (1) an error in the proceedings; (2) the error must be plain, i.e., the error must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," i.e., the trial court's error must have affected the outcome of the trial. See, e.g., State v.Noling, 98 Ohio St.3d 44, 56, 2002-Ohio-7044; State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68. Furthermore, Crim.R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. *Page 14 Landrum (1990), 53 Ohio St.3d 107, 111; see, also, State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. A reviewing court should consider noticing plain error only if the error "`"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" Barnes at 27, quoting United States v. Olano (1993),507 U.S. 725, 736, quoting United States v. Atkinson (1936), 297 U.S. 157,160.
 {¶ 31} Because the presence of restraints tends to erode the presumption of innocence that our system attaches to every defendant, "no person should be tried while shackled * * * except as a last resort." Illinois v. Allen (1970), 397 U.S. 337, 344; see, also,State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 219; State v.Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 79. "The placing of restraints upon a criminal defendant during his trial may significantly affect the jury's perception of the defendant, and may thus infringe upon the presumption of innocence, by stripping the defendant of the physical indicia of innocence. Restraints may also impede the defendant's ability, and thus implicate his Sixth Amendment right, to confer with his counsel and to assist in his defense. Moreover, the use of restraints may `affront * * * the very dignity and decorum of judicial proceedings that the judge[,] [by imposing the restraints, was] seeking to uphold.'"' State v. Leonard, Hamilton App. No. C-030492,2004-Ohio-3323, quoting Allen, 397 at 344.
 {¶ 32} While shackling is an extreme measure, in some circumstances it may be necessary for the safe, reasonable, and orderly progress of the trial, such as when a defendant presents a danger of violence or escape.State v. Evans, *Page 15 
Scioto App. No. 05CA3002, 2006-Ohio-2564, ¶ 38, citing State v.Frazier, Hamilton App. Nos. C-030571 and C-030572. Nevertheless, because the use of restraints is an inherently prejudicial practice, courts should use them only as a last resort and only when they are justified "by an essential state interest specific to each trial."Leonard, supra, at ¶ 45, quoting Allen at 344, and Holbrook v.Flynn (1986), 475 U.S. 560, 568-569; see, also, Evans; Frazier.
 {¶ 33} The decision whether to impose restraints lies within the trial court's discretion. Franklin at ¶ 79-80. Thus, an appellate court will not disturb the trial court's exercise of its discretion to impose restraints if the record demonstrates "a compelling need to impose exceptional security procedures." Id. at ¶ 82; Leonard at ¶ 49. While the decision lies within the trial court's discretion, the court must actually exercise its discretion. Frazier. It cannot simply defer to the wishes of police officers or order restraints solely because of the defendant's status as an inmate. Frazier, citing State v. Carter (1977),53 Ohio App.2d 125, 131; Brofford v. Marshall (C.A.6, 1985),751 F.2d 845, 855; State v. Ward, Cuyahoga App. No. 81282, 2003-Ohio-3015, ¶ 27;State v. Simmons (Dec. 20, 1995), Scioto App. No. 94CA2281.
 {¶ 34} Here, the trial court did not abuse its discretion by ordering Reine restrained during trial. The testimony presented at the security hearing showed that Reine had threatened the judge and the prosecutor. Moreover, as the court noted, an element of the offense with which the state charged Reine was his current incarceration. Thus, the jury would learn of Reine's status as a convict, regardless of whether he was restrained during the trial. *Page 16 
 {¶ 35} Therefore, based upon the foregoing reasons, we find that the trial court did not commit any error, let alone plain error, when it ordered Reine restrained.
 {¶ 36} Accordingly, we overrule Reine's second assignment of error.
 IV. {¶ 37} For convenience, we address Reine's third and fourth assignments of error together.
 {¶ 38} In his third assignment of error, Reine argues that he did not receive effective assistance of trial counsel. He asserts that trial counsel was ineffective by deferring to his request (1) not to "take [a] position" regarding the use of restraints during trial, (2) that she withdraw her objection to the physical evidence reports, and (3) that she not pursue a motion to recuse the judge and the prosecutor. Reine claims that trial counsel's decision to defer to him constituted ineffective assistance of counsel because counsel should have known that he was not competent to make decisions in his defense. He states that he is a "man who sees Satan, who has visions and who believes that the guards are poisoning him."
 {¶ 39} Reine additionally contends that counsel was ineffective because she did not (1) request a competency hearing, (2) file a motion to examine Reine's sanity, (3) file a not guilty by reason of insanity plea, and (4) object to the use of Reine's prior criminal record.
 A. STANDARD FOR EVALUATING INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS *Page 17 {¶ 40} In order to prove an ineffective assistance of counsel claim, a defendant must show that trial counsel's performance was deficient, i.e., not reasonably competent, and that counsel's deficiencies prejudiced his defense. Strickland v. Washington (1984), 466 U.S. 668,687; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id.
 {¶ 41} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the trial would have been different. State v. White (1998),82 Ohio St.3d 16, 23; State v. Bradley (1989), 42 Ohio St.3d 136, at paragraph three of the syllabus. Furthermore, courts should not simply assume the existence of prejudice, but require that it be affirmatively shown. SeeState v. Hairston, Scioto App. No. 06CA3089, 2007-Ohio-3707, citingState v. Clark, Pike App. No. 02CA684, 2003-Ohio-1707, ¶ 22; State v.Tucker (Apr. 2, 2002), Ross App. No. 01CA2592; State v. Kuntz (Feb. 26, 1992), Ross App. No. 1691.
 {¶ 42} If one prong of the Strickland test disposes of an ineffective assistance of counsel claim, we need not address both aspects. State v.Martin, Scioto App. No. 06CA3110, 2007-Ohio-4258. *Page 18 
 B. DEFERRING TO CLIENT {¶ 43} Generally, an attorney does not render ineffective assistance by deferring to a client's wishes. See, e.g., State v. Roberts,110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 148; State v. Monroe, 105 Ohio St.3d 384,2005-Ohio-2282, ¶ 100; State v. Cowans (1999), 87 Ohio St.3d 68, 81;State v. Keith (1997), 79 Ohio St.3d 514, 536 (all stating that trial counsel does not render ineffective assistance of counsel by deferring to a client's desire not to present mitigation evidence during penalty phase).
 {¶ 44} Here, we are unable to conclude that trial counsel rendered ineffective assistance of counsel by deferring to Reine's wishes. The great majority of the record before this court shows that Reine participated in his defense and was no stranger to the legal system. His discussion of Satan that occurred toward the end of the trial is not enough to show that he was incompetent or that his attorney should have suspected that he was incompetent to make decisions on his own behalf. Thus, we can glean nothing from the record that would lead us to conclude that trial counsel rendered ineffective assistance of counsel by deferring to Reine's stated desires.
 C. FAILURE TO REQUEST COMPETENCY HEARING {¶ 45} Reine next argues that trial counsel rendered ineffective assistance of counsel by failing to request a competency hearing. *Page 19 
 {¶ 46} Because Reine's fourth assignment of error also addresses his competency to stand trial, we address it here. In his fourth assignment of error, Reine asserts that he did not receive a fair trial because the court failed, sua sponte, to inquire into his sanity.
 {¶ 47} A defendant is presumed competent to stand trial unless it is proven, by a preponderance of the evidence, that the defendant is incapable of understanding the nature and objective of the proceedings or of assisting in his defense. R.C. 2945.37(G). "It has long been recognized that a `person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial.'" State v. Smith (2000), 89 Ohio St.3d 323, 329, quotingDrope v. Missouri (1975), 420 U.S. 162, 171. "Fundamental issues of due process require that a criminal defendant who is legally incompetent may not be tried." State v. Thomas (2002), 97 Ohio St.3d 309, 315, citingState v. Berry (1995), 72 Ohio St.3d 354, 359.
 {¶ 48} A defendant is competent to stand trial if the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." Gordinez v.Moran (1993), 509 U.S. 389, 396, quoting Dusky v. United States (1960),362 U.S. 402.
 {¶ 49} Courts have consistently held that "`mental illness' does not necessarily equate with the definition of legal incompetency."Berry at syllabus. "Incompetency must not be equated with mere mental or emotional instability or *Page 20 
even outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." State v. Bock (1986), 28 Ohio St.3d 108,110. Moreover, deference on the determination of such issues is best granted to those "who see and hear what goes on in the courtroom."State v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 157, citingState v. Cowans (1999), 87 Ohio St.3d 68, 84.
 {¶ 50} Under R.C. 2945.37(B), the trial court, the prosecutor, or the defendant may raise the issue of the defendant's competency. R.C.2945.37(B) requires a competency hearing if requested before trial.State v. Were (2002), 94 Ohio St.3d 173, paragraph one of the syllabus. However, "if the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion." The right to a hearing rises to the level of a constitutional guarantee when the record contains sufficient "indicia of incompetency" to necessitate inquiry to ensure the defendant's right to a fair trial. Id. at paragraph two of the syllabus. Objective indications such as medical reports, specific references by defense counsel to irrational behavior, or the defendant's demeanor during trial are all relevant in determining whether good cause was shown after the trial had begun. State v. Chapin (1981), 67 Ohio St.2d 437, paragraph one of the syllabus.
 {¶ 51} Whether a trial court should hold a competency hearing once the trial has commenced is a matter within the trial court's discretion and will not be reversed absent evidence that the court abused its discretion. State v. Rahman (1986), 23 Ohio St.3d 146, 156. An abuse of discretion is more than an error of law or *Page 21 
judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990),53 Ohio St.3d 161, 169 (citation omitted). A trial court's "failure to hold a competency hearing is harmless error where the defendant proceeds to participate in the trial, offers his own testimony in defense and is subject to cross-examination, and the record fails to reveal sufficient indicia of incompetency." Bock at paragraph one of the syllabus.
 {¶ 52} Here, the record does not demonstrate sufficient indicia of incompetency. The record fails to demonstrate that Reine did not understand the nature and objective of the proceedings against him or that he was unable to assist in his own defense. Reine's last-minute outburst about Satan and his belief that the guards are poisoning him demonstrate, at most, mental instability, not incompetence. Furthermore, his vague reference to a "vision" does not demonstrate incompetency. Reine participated in his defense and talked rationally with the court during pre-trial discussions and throughout the great majority of his direct and cross-examination. Consequently, there is nothing in the record that should have alerted either trial counsel or the trial court to Reine's competency to stand trial. Therefore, trial counsel did not render ineffective assistance of counsel by failing to request a competency hearing, and the trial court did not err by failing to sua sponte hold a competency hearing.
 {¶ 53} For these same reasons, trial counsel was not ineffective for failing to request that the court inquire into Reine's sanity or for failing to file a not guilty by reason of insanity plea. There is nothing in the record to show that defense counsel possessed any knowledge regarding Reine's sanity, or lack thereof, *Page 22 
before his Satan outburst. Additionally, there is no evidence to suggest that Reine was legally insane at the time he committed the offenses. His one statement that he woke up in the morning and wrote down a "vision" does not reasonably suggest that he was legally insane. Moreover, as we noted, Reine participated in his defense and consulted with his attorney. Contra State v. Brown (1992), 84 Ohio App.3d 414, 421-422
(finding trial counsel rendered ineffective assistance of counsel by failing to file not guilty by reason of insanity plea when defendant possessed no recollection of the crime, his last memory was of speaking to his dead mother at the gas station where defendant believed his father had buried her, and his next memory was waking up at a psychiatric hospital).
 D. PRIOR CONVICTIONS {¶ 54} Reine further argues that trial counsel rendered ineffective assistance of counsel by failing to object to his testimony on cross-examination concerning his prior convictions.
 {¶ 55} In general, the failure to object to an error at trial may be justified as a trial tactic and thus cannot establish an ineffective assistance of counsel claim. State v. Johnson, 112 Ohio St.3d 210,2006-Ohio-6404, ¶ 138; State v. Gumm (1995), 73 Ohio St.3d 413, 428
("failure to make objections does not constitute ineffective assistance of counsel per se, as that failure may be justified as a tactical decision"). Strategic trial decisions are left to the deference of trial counsel and we will not second-guess them. State v. Carter (1995), 72 Ohio *Page 23 
St.3d 545, 558, Gumm at 428. "[Experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." Johnson
at ¶ 140, quoting Lundgren v. Mitchell (C.A.6, 2006), 440 F.3d 754, 774. Thus, to prevail on a claim that counsel was ineffective for failing to object at trial, "`a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness.'" Johnson at ¶ 139, quoting State v. Holloway (1988),38 Ohio St.3d 239, 244.
 {¶ 56} Here, Reine cannot show that defense counsel's failure to object to his testimony concerning his prior convictions was strategically unreasonable. Counsel reasonably could have determined that objecting to the evidence may have further called the jury's attention to his prior convictions, while remaining silent may have lessened the impact. Counsel's failure to object did not essentially "default the case to the state." See Lundgren at 774, quoted inJohnson. Consequently, Reine cannot demonstrate that trial counsel rendered ineffective assistance of counsel by failing to object to his testimony on cross-examination regarding his prior convictions. *Page 24 
 {¶ 57} Therefore, Reine failed to show that his trial counsel's performance was deficient, i.e., not reasonably competent, because he did not overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. Consequently, we do not need to address the second (prejudice) prong of the Strickland test.
 {¶ 58} Accordingly, we overrule Reine's third and fourth assignments of error.
 V. {¶ 59} In his fifth assignment of error, Reine argues that the prosecutor committed misconduct during closing arguments by improperly vouching for the credibility of a witness when he stated: "Inmate Reine says he didn't hit Capt. Oppy but he was sure trying to. Ladies and gentlemen, I would be willing in that situation to trust the judgment of a Corrections Officer of fifteen years as to whether when facing an inmate an inmate spit on him or not."
 {¶ 60} Reine did not object to the prosecutor's comment. Thus, we can recognize the error only if it constitutes plain error. We previously set forth the standard for finding plain error and do not repeat it here.
 {¶ 61} "A prosecutor's remarks constitute misconduct if the remarks were improper and if the remarks prejudicially affected an accused's substantial rights." State v. Williams (2003), 99 Ohio St.3d 439,2003-Ohio-4164, ¶ 44. "The touchstone of this analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quotingSmith v. Phillips (1982), 455 U.S. 209, 219.
 {¶ 62} During closing arguments, counsel "may state his or her opinion if it is based on the evidence presented at trial." State v.Jackson, 107 Ohio St.3d 300, *Page 25 2006-Ohio-1, ¶ 154, certiorari denied (2006), ___ U.S. ___,126 S.Ct. 2359. However, neither the prosecutor nor defense counsel is permitted to express his or her personal belief as to a witness's credibility.State v. Gapen, 104 Ohio St.3d 358, 2004-Ohio-6548, ¶ 95; State v.Williams (1997), 79 Ohio St.3d 1, 12. Counsel may not vouch for a witness's credibility because, "[i]n order to vouch for the witness, [counsel] must imply knowledge of facts outside the record or place [counsel's] personal credibility in issue." State v. Jackson,107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 117.
 {¶ 63} A prosecutor does not improperly vouch for a witness's credibility by arguing, based upon the evidence, that a witness was "a reliable witness to the simple events she witnessed, that she lacked any motive to lie, [or] that her testimony was not contradictory." State v.Green (2000), 90 Ohio St.3d 352, 373-374; see, also, Jackson at ¶ 120. Furthermore, a prosecutor's statement on witness credibility is not an improper voucher if it neither implies knowledge of facts outside the record nor places the prosecutor's personal credibility at issue.State v. Keene (1998), 81 Ohio St.3d 646, 666. A prosecutor may argue facts in evidence to support a witness's credibility and may respond to defense attacks on the witness's credibility and mental abilities.Green at 374; State v. Woodard (1993), 68 Ohio St.3d 70, 76.
 {¶ 64} Moreover, the prosecutor is entitled to a certain degree of latitude in closing argument. State v. Smith (2000), 87 Ohio St.3d 424,442-443, citing State v. Liberatore (1982), 69 Ohio St.2d 583, 589. Additionally, closing arguments must be viewed in their entirety to determine whether the disputed *Page 26 
remarks were unfairly prejudicial. State v. Treesh (2001),90 Ohio St.3d 460, citing State v. Moritz (1980), 63 Ohio St.2d 150, 157.
 {¶ 65} Here, even if we assume the prosecutor improperly commented on a witness's credibility, Reine cannot demonstrate prejudice. Captain Oppy was not the only witness who testified that Reine spat on him. Sergeant Bear also testified that he saw Reine spit on Captain Oppy. Additionally, Sergeant Call testified that Reine admitted that he spat on Captain Oppy. Thus, this one allegedly improper comment does not demonstrate prejudice.
 {¶ 66} Accordingly, we overrule Reine's fifth assignment of error.
 VII. {¶ 67} In his sixth assignment of error, Reine contends that his conviction for one count of possession of a deadly weapon while under detention is inconsistent with the jury's verdict of acquittal on the felonious assault count and the second count of possession of a deadly weapon while under detention.
 {¶ 68} "`Inconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict * * *.'" Gapen at ¶ 138, quoting State v. Hicks (1989), 43 Ohio St.3d 72, 78. "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.'" Id., quoting State v. Adams (1978),53 Ohio St.2d 223, paragraph two of the syllabus. Thus, a verdict will not be set aside merely because the findings necessary to support the conviction are *Page 27 
inconsistent with the findings necessary to acquit the defendant of another charge. See Browning v. State (1929), 120 Ohio St. 62, 71.
 {¶ 69} Here, Reine alleges inconsistency between the verdicts on a multi-count indictment. As the Supreme Court of Ohio explicitly held inGapen, this is not the type of inconsistency that justifies setting aside a verdict.
 {¶ 70} Accordingly, we overrule Reine's sixth assignment of error.
 VII. {¶ 71} In his seventh assignment of error, Reine asserts that cumulative errors deprived him of a fair trial.
 {¶ 72} Separately harmless errors may violate a defendant's right to a fair trial when they are considered together. State v. Madrigal (2000),87 Ohio St.3d 378, 397. In order to find "cumulative error" present, we must find that multiple errors were committed at trial. Id. at 398. We must then find a reasonable probability that the outcome would have been different but for the combination of the separately harmful errors.State v. Thomas, Clark App. No. 2000-CA-43, 2001-Ohio-1353. However, "`errors cannot become prejudicial by sheer weight of numbers.'"State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 211, quotingState v. Hill (1996), 75 Ohio St.3d 195, 212.
 {¶ 73} Here, multiple error did not occur. Therefore, the cumulative error doctrine does not apply.
 {¶ 74} Accordingly, we overrule Reine's seventh assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 28 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED, and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. and Kline, J.: Concur in Judgment and Opinion.
 Harsha, J.: Concurs in Judgment Only.
 *Page 1