DECISION AND JUDGMENT ENTRY
{¶ 1} After being convicted of receiving stolen property for possessing two license plates that belonged to a neighbor, Thomas Woodruff appeals and claims the state failed to prove he possessed the plates while knowing, or having reasonable cause to believe, they were stolen. We conclude his conviction is supported by the weight of the evidence because one of the stolen plates was on Woodruff's van and he retrieved the other one from under his trash can after being confronted by the police. Moreover, reasonable minds could find Woodruff knew, or should have known, the plates were stolen because: 1) he offered no explanation for having them; 2) the nature of license plates is such that they are issued to specific vehicles; 3) he was seen near the plates on the day they were stolen; and 4) he retrieved one of the plates from underneath a trash can where he apparently tried to hide it. *Page 2 
 {¶ 2} Woodruff also contends the trial court abused its discretion when it sentenced him to prison rather than finding he was suitable for community control sanctions. He bases this assertion on the court's failure to order a presentence investigation and its questions about Woodruff's prior record. However, a trial court is not required to order a presentence investigation prior to imposing a sentence. While the record does indicate there was concern by the court over whether the state had Woodruff's complete criminal history, the record clearly indicates the court considered the appropriate factors and conducted the proper analysis in imposing its sentence. Because Woodruff did in fact have prior felony convictions for trafficking in marijuana and possessing a weapon under a disability, the court could properly rely on those indicators of recidivism in imposing a prison term. And because the sentence was within the range provided by the statute, we cannot say it is contrary to law.
 {¶ 3} Thus, we affirm his conviction and sentence.
 I. Facts {¶ 4} George Stevens took his car across the street so his neighbor, Tim Bevins, could give it a tune-up after work. The car remained at Bevins' house for at least four or five days. However, before Bevins finished working on it, someone stole the license plates off the vehicle. Stevens filed a report with the police department, and a month later saw one of the missing plates on the vehicle of Thomas Woodruff, who lived about a block away on the same street. After Stevens contacted the police, Officer Netter went to Woodruff's residence where he initially observed a license plate on Woodruff's van. Before he could contact Woodruff, he responded to two individuals across the street who asked him some questions. When he returned to Woodruff's *Page 3 
driveway, the license plate he had originally observed on the van was gone and Woodruff was in the carport. When Woodruff denied knowing anything about the plate that had disappeared from the back of the van, Netter walked to the front of the van where he located a license plate that corresponded to the one he had already seen. Netter again confronted Woodruff, who ultimately retrieved the missing plate from underneath his trash can and gave it to Netter. Netter apparently didn't ask how the plates got on Woodruff's car, nor did Woodruff offer any explanation. After Netter confirmed the license plates belonged to Stevens, he took them and returned to the police department.
 {¶ 5} Although Woodruff chose not to testify, he used cross-examination and testimony from his witnesses to establish that the victim, Stevens, had a long-term, live-in relationship with Woodruff's sister, Ruth Rhoades. He also introduced evidence that there was "bad blood" between Woodruff and Rhoades over the disposition of their mother's home upon her death. Woodruff received the home because he lived with his mother; Rhoades wanted him out and threatened to have him put in jail to accomplish that goal. Thus, Woodruff's primary defense was that Stevens and Rhoades were framing him. In fact, the defense provided a witness who heard Rhoades say she was going to walk down to Woodruff's and put the plates on his vehicle. In spite of this testimony, the jury convicted Woodruff and the court sentenced him to ten months imprisonment.
 II. Assignments of Error {¶ 6} Woodruff raises two assignments of error in this appeal:
 1) Appellant's conviction is against the manifest weight of the evidence. *Page 4 
 2) The trial court abused its discretion in sentencing appellant to jail time when the record failed to justify the sentence.
 III. Substantial Credible Evidence {¶ 7} In his first assignment of error, Woodruff claims the jury's verdict is against the manifest weight of the evidence. In reviewing a claim that a judgment is against the manifest weight of the evidence, we will not reverse a conviction where there is substantial evidence upon which the trier of fact could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.State v. Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. See, also, State v.Thomas (1982), 70 Ohio St.2d 79, 434 N.E.2d 1356:
 In determining whether the verdict was against the manifest weight of the evidence, "* * * [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Davis (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966. (Citations omitted).
R.C. 2913.51 establishes the crime of receiving stolen property and provides:
 (A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 {¶ 8} Woodruff contends the state failed to prove he retained or received the license plates and that he did so either knowingly or having reasonable cause to believe *Page 5 
they were stolen. He bases his argument on the assertion that his "conviction rested solely on the fact that Mr. Stevens' plates were found on Mr. Woodruff's van." Even if this assertion was true, it would be enough for the jury to infer constructive possession. See State v.Hankerson (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus, stating actual possession is not required and constructive possession may suffice. More importantly, it is not accurate. Here Officer Netter testified Woodruff retrieved one of the plates from under his trash can where he apparently hid it when Netter showed up in his driveway. This evidence satisfies the receive or retain element of the crime.
 {¶ 9} Woodruff's argument concerning knowledge or a reasonable belief that the plates were stolen fails because of circumstantial rather than direct evidence. See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph one of the syllabus (holding circumstantial and direct evidence have equal probative value). Absent an admission by a defendant, the state must rely on circumstantial evidence to satisfy the reasonable cause to believe element. See, e.g., State v. Reine, Scioto App. No. 06CA3102, 2007-Ohio-7221, at ¶ 23. This element of the crime involves an objective test of the accused's knowledge. Thus, the jury must look at all the facts and circumstances to determine whether a person of ordinary prudence should have known the property was stolen. See State v. Hill, Pickaway App. No. 02CA11, 2002-Ohio-7368, at ¶ 11. Some of the circumstances the fact finder can consider are listed inDavis, at 112. They include: 1) the accused's unexplained possession of the property; 2) the nature of the property; 3) the frequency with which such property is stolen; 4) the nature of the accused's commercial activity; and 5) the length of time between the theft and recovery of the property. *Page 6 
 {¶ 10} Here we are dealing with stolen license plates. They are a type of property that the state issues to specific vehicles; they are not interchangeable. Thus, it is clear that the owner of a vehicle should know he cannot have possession of someone else's plates or use them on his vehicle. Likewise, the true owner of the plates is not likely to throw them away while they are still good, nor loan them to a third party who might give them to the accused.
 {¶ 11} Woodruff contends his lack of an explanation for having Stevens' plates is not entitled to much persuasive value because Netter never asked why he had them. Even if this is true, there is more to the story of Woodruff's contact with Netter. Someone removed one of the plates from Woodruff's van in an apparent attempt to hide it from Netter after he parked his cruiser behind the van. Woodruff was near the van in his driveway shortly after the plate disappeared. And, he retrieved the plate from under his garbage can after being confronted by Netter. An attempt to hide property that does not belong to you is indicative of knowledge it may have been stolen. Not only did Woodruff attempt to hide the plate when Netter showed up, Bevens saw him looking at the vehicle it came from shortly before the plates were discovered missing.
 {¶ 12} Based upon the totality of the circumstances in the record, the jury could have reasonably inferred that Woodruff either knew or should have known the license plates had been obtained by a theft offense. Thus, the manifest weight of the evidence support its verdict.
 IV. Sentencing {¶ 13} Woodruff contends the trial court abused its discretion in sentencing him to ten months imprisonment. Notwithstanding the Supreme Court of Ohio decision in *Page 7 State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, our review of a trial court's sentence is not limited to a simple abuse of discretion analysis. As a matter of law, a sentencing court must still consider the overriding purposes and principles found in R.C. 2929.11, the seriousness and recidivism factors found in R.C. 2929.12, and the statutory range of possible prison terms according to their felony degree. See, State v. Vickroy, Hocking App. No. 06CA4, 2006-Ohio-5461, at ¶ 14-16. If the court considers those requirements, it is generally free to exercise its discretion by imposing a sentence within the statutory range. Unless the sentence is otherwise contrary to law, i.e., conducted without a chance for elocution, in the absence of the defendant, etc., we afford it a low degree of scrutiny.
 {¶ 14} Here, Woodruff complains that the trial court did not order a presentence investigation before imposing sentencing. However, Crim.R. 32.2 states:
 In felony cases the court shall, and in misdemeanor cases the court may, order a presentence investigation and report before imposing community control sanctions or granting probation.
 {¶ 15} Thus, a presentence investigation is not mandatory where the court orders imprisonment rather than community control sanctions. SeeState v. Cyrus (1992), 63 Ohio St.3d 164, 386 N.E. 2d 94, syllabus, andState v. Furr, Licking App. No. 07CA00020, 2007-Ohio-5548, at ¶ 69.
 {¶ 16} He also complains that the court failed to "individually look at the requirements of 2929.12 or 2929.13." However, the court indicated at the sentencing hearing that it had considered R.C. 2929.11, 2929.12, and 2929.13 before imposing sentence. Because there is no requirement that the court make specific findings concerning the various factors in these statutes, the courts conduct in this regard is not *Page 8 
contrary to law. See, e.g., State v. Arnett, 88 Ohio St.3d 208, 215,2000-Ohio-302, 729 N.E.2d 793, stating court could satisfy its duty under R.C. 2929.12 by rote recitation. While specific references to the applicability of various subsections would be helpful for appellate review, it is not required.
 {¶ 17} Finally, Woodruff argues that the trial court acted solely on the basis of his prior record in deciding prison rather than community control was the appropriate sanction. In light of the trial court's foregoing references to R.C. 2929.11, 2929.12, and 2929.13, this assertion is not correct. While the record does indicate there was concern by the court over whether the state had Woodruff's complete criminal history, the record clearly indicates the court considered the appropriate factors and conducted the proper analysis in imposing its sentence. Because Woodruff did in fact have prior felony convictions for trafficking in marijuana and possessing a weapon under a disability, the court could properly rely on those indicators of recidivism in imposing a prison term. And because the sentence was within the range provided by the statute, we cannot say it is contrary to law.
 {¶ 18} Thus, we affirm his conviction and sentence.
 JUDGMENT AFFIRMED. *Page 9 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. McFarland, J.: Concur in Judgment and Opinion. *Page 1