[Cite as *State v. Flucas*, 2018-Ohio-3340.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,                    :        CASE NO. CA2017-09-139

                                           :        O P I N I O N
- vs -                                                 8/20/2018

                                           :

KENDALL FLUCAS,                            :

    Defendant-Appellant.                   :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR32909


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Kidd & Urling LLC, Thomas W. Kidd, Jr., 8913 Cincinnati-Dayton Road, West Chester, Ohio 45069, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Kendall Flucas, appeals his conviction in the Warren County Court of Common Pleas for harassment with bodily substance. For the reasons described below, this court affirms Flucas' conviction.

{¶ 2} The state alleged that Flucas, an inmate at Warren Correctional Institution, spat upon corrections officer (CO) Eric Ruff, who was escorting Flucas. A Warren County grand

jury indicted Flucas with one count of harassment with bodily substance, a violation of R.C. 2921.38(A), and a felony of the fifth degree. CO Ruff was unavailable at the jury trial because he died in a motor vehicle accident.

{¶ 3} At trial, CO Matthew Smith, who worked in the same prison unit, testified that he responded to the sound of a verbal argument. When he arrived on scene he took over escorting Flucas. CO Smith observed a "wet substance" on CO Ruff's chest. During CO Smith's testimony, the state published security video of the incident.

{¶ 4} The first two videos depict alternate angles of CO Ruff escorting Flucas up a flight of stairs in a prison housing unit. CO Ruff is following Flucas. The two appear to be conversing. About halfway up the stairs Flucas turns his head around and toward CO Ruff. CO Ruff immediately reacts, grabbing Flucas, turning him around, and leading him back down the steps and out of camera range at a hurried pace. During the incident CO Ruff appears annoyed and angry.

{¶ 5} The second video depicts a room where CO Ruff escorted Flucas immediately following the incident and where CO Smith took charge of Flucas. In this video, CO Ruff faces the security camera and there appears to be an irregular dark spot in the chest area of CO Ruff's shirt.

{¶ 6} Following the publication of the video, CO Smith resumed testifying. He took Flucas' written statement, which Flucas signed. Flucas wrote "[h]e was grabbing too rough, and I aint like it so I turned around and spit in his face. We already had words before."

{¶ 7} Nurse Cassie Barrett testified that she conducted a medical check on Flucas following the incident. Flucas told her "I spit on dude." Ohio State Trooper Jeff Madden testified that he interviewed Flucas, who admitted that he spit on CO Ruff.

{¶ 8} Lieutenant Jason Back testified that Flucas said that he and CO Ruff were discussing a prior incident and that he spat upon CO Ruff. Lieutenant Back secured CO

Ruff's shirt, circled the area where Flucas' allegedly spat, and stored the shirt in an evidence bag, which was sent to the Bureau of Criminal Investigation (BCI) for laboratory testing.

{¶ 9} A forensic scientist at BCI testified that she performed a test for amylase, a component of saliva, on the circled area of CO Ruff's shirt. The test was positive. The scientist conceded that amylase could be found in other bodily substances, such as urine and semen, although saliva contained greater quantities of amylase.

{¶ 10} Flucas did not put on a defense. The jury returned a guilty verdict. Flucas raises two assignments of error in this appeal.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED IN ADMITTING FLUCAS'S CONFESSIONS IN VIOLATION OF THE CORPUS DELICTI RULE.

{¶ 13} Flucas argues that the admission of his confessions violated the corpus delicti rule. Flucas did not raise this objection at trial and is thus limited to a review for plain error. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error is plain error only if it is "obvious," and "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Morgan*, 12th Dist. Clermont No. CA2013-03-021, 2014-Ohio-250, ¶ 14. The plain error rule should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice. *State v. Underwood*, 3 Ohio St.3d 12, 14 (1983).

{¶ 14} The "corpus delicti" of a crime means the body or substance of the crime, and it consists of two elements: (1) the act, and (2) the criminal agency of the act. *State v. Maranda*, 94 Ohio St. 364 (1916), paragraph one of the syllabus. "It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible." *Id.* at paragraph two of the syllabus.

{¶ 15} "'The doctrine * * * was born out of great caution by the courts, in consideration of certain cases of homicide wherein'" a defendant's confession was used to convict him of a crime that never occurred. *Morgan* at ¶ 16, quoting *Maranda* at 370. However, given the procedural safeguards afforded defendants in modern criminal practice, "the practicality of the rule has come into serious question." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 27. Consequently, the Ohio Supreme Court has indicated that although the corpus delicti rule remains applicable, it need not be applied with a "dogmatic vengeance." *Morgan* at ¶ 16. The burden on the state to provide some evidence of the corpus delicti is minimal and it is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged. *State v. Sturgill*, 12th Dist. Clermont No. CA2004-02-008, 2004-Ohio-6481, ¶ 9-10.

{¶ 16} Flucas argues that the court violated the corpus delicti rule because no state's witnesses testified that they observed Flucas spit on CO Ruff prior to when the state admitted his confession. Harassment by bodily substance, a violation of R.C. 2921.38(A), provides:

> No person who is confined in a detention facility, with intent to harass, annoy, threaten, or alarm another person, shall cause or attempt to cause the other person to come into contact with blood, semen, urine, feces, or another bodily substance by throwing the bodily substance at the other person, by expelling the bodily substance upon the other person, or in any other manner.

{¶ 17} The court did not err, plainly or otherwise, in admitting evidence of Flucas' confession to CO Smith, or the remaining three confessions. Before trial, Flucas stipulated that he was confined in a detention facility. CO Smith testified that he responded to a verbal argument involving Flucas and CO Ruff and observed a wet substance on CO Ruff's chest. The security video was then published to the jury. The video depicts Flucas and CO Ruff conversing. Flucas then turns his head towards CO Ruff, and CO Ruff immediately and angrily reacted in a manner consistent with being spat upon. The video also depicts CO Ruff

with an irregular dark spot on his uniform. This evidence, all of which was introduced prior to Flucas' confessions, tends to prove various material elements of the crime of harassment with bodily substance. Therefore, the admission of Flucas' confessions was not in violation of the corpus delicti rule and this court overrules Flucas' first assignment of error.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN MR. FLUCAS'S CONVICTION.

{¶ 20} Flucas argues that the state's evidence was insufficient because the state failed to prove that he was not in a detention facility operated by the department of mental health and addiction services or the department of developmental disabilities, i.e., a statutory exception to the offense. Flucas also argues that the jurors lost their way in convicting him because no witness observed him spit on CO Ruff and the BCI scientist could only confirm that the affected area tested positive for amylase, not saliva.

{¶ 21} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 16. The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 22} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of

- 5 -

the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 15.

{¶ 23} With respect to the sufficiency of the evidence, Flucas argues that the state failed to prove that he did not qualify for a statutory exception to harassment by bodily substance. R.C. 2921.38(F) provides: "this section does not apply to a person who is hospitalized, institutionalized, or confined in a facility operated by the department of mental health and addiction services or the department of developmental disabilities." Stated otherwise, Flucas is arguing that R.C. 2921.38(F) constitutes an element of the crime of harassment by bodily substance.

{¶ 24} Upon review, this court concludes that R.C. 2921.38(F) sets forth an exception to the crime of harassment by a bodily substance and does not constitute an additional element of the offense that the state must prove. The structure of the statute is instructive. R.C. 2921.38(A) through (C) set forth the various elements of the offense. R.C. 2921.38(D) then states that whoever violates this section is guilty of harassment with bodily substance and provides the degree of the crime depending upon which subsection the offender is convicted. Finally, subsection (F) sets forth the exception for those detained in certain mental health or developmental disabilities facilities. Thus, the statute defines the offense, sets the penalty, and concludes with an exception to the offense in the nature of an affirmative defense. The Ohio Jury Instructions corroborate this analysis, only referring to the language of R.C. 2921.38 (A) through (C) in defining the offense. *Ohio Jury Instructions*, CR

Section 521.38 (Rev. May 3, 2008). Moreover, the committee notes specifically refer to the (F) subsection as creating a statutory exception to the offense and not a jury question. *Id.*

{¶ 25} Flucas cites no legal authority in his appellate brief for the proposition that R.C. 2921.38(F) constitutes an additional element of the crime. However, while arguing his Crim.R. 29 motion during trial, Flucas cited a case from Ohio's Ninth District Court of Appeals, *State v. Noble*, 9th Dist. Lorain, No. 04CA008495, 2005-Ohio-600. The court there – in the context of reviewing the denial of a pretrial motion to dismiss – commented that R.C. 2921.38(E) (now R.C. 2921.38[F]) set forth a necessary element of the offense of harassment with bodily substance, and that the state "had to prove that the detention facility was not a facility operated by the department of mental health or the department of mental retardation and developmental disabilities." *Id.* at ¶ 8. The court cited no authority for this proposition.

{¶ 26} *Noble* is unpersuasive.[1] And this court is aware of no other legal authority in Ohio that has concluded that the exception set forth in R.C. 2921.38(F) constitutes an element of the offense of harassment by bodily substance. This court and others have consistently concluded that the elements of the offense are set forth in R.C. 2921.38(A). *State v. Stout*, 12th Dist. Warren No. CA2010-04-039, 2010-Ohio-4799, ¶ 11; *State v. Blackmon*, 130 Ohio App.3d 142, 147 (12th Dist.1998); *State v. Miller*, 8th Dist. Cuyahoga No. 93731, 2010-Ohio-4347, ¶ 3; *State v. Reine*, 4th Dist. Scioto No. 06CA3102, 2007-Ohio-7221, ¶ 22. Flucas does not challenge any other aspect of the sufficiency of the state's proof and this court concludes that his conviction was supported by sufficient evidence in an overwhelming manner.

---

1. Other than failing to cite authority or explain its rationale, the court's manifest weight analysis suggests that the absence of evidence related to the exception allowed the state to meet its evidentiary burden to prove that element: "[t]here was no evidence to indicate that the prison segregation unit was operated by the department of mental health or the department of mental retardation and developmental disabilities." *Id.* at ¶ 45.

{¶ 27} With respect to the manifest weight of the evidence, this court finds that the jurors did not lose their way in convicting Flucas. Security video captured the incident and depicted Flucas turning his head toward CO Ruff's chest. CO Ruff reacted in a way consistent with being spat upon. The video depicted a dark spot on CO Ruff's uniform. Flucas confessed to four individuals. Flucas provided a signed and written confession admitting that he "turned around and spit" in CO Ruff's face because CO Ruff was grabbing him, and he did not like it. Finally, the BCI scientist confirmed that the affected area of the uniform tested positive for amylase, a component of saliva. This evidence constituted competent and credible evidence demonstrating that Flucas, with the intention to harass or annoy CO Ruff, spat upon CO Ruff. Flucas' conviction was wholly supported by the evidence. Flucas' second assignment of error is overruled.

{¶ 28} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.