OPINION
{¶ 1} Appellant Jeffery S. Beatty timely appeals his convictions following a jury trial in the Jefferson County Court of Common Pleas. He was convicted of breaking and entering, a fifth degree felony, in violation of R.C. § 2911.13(B); theft of a vehicle, a fourth degree felony, in violation of R.C. § 2913.02(A)(1); vandalism of the motor vehicle, a fourth degree felony, in violation of R.C. §2909.05(B)(1)(a); and possession of criminal tools, a fifth degree felony in violation of R.C. § 2923.24. He was sentenced to four, consecutive 12-month terms on each offense, for a total of four years in prison.
 {¶ 2} Appellant argues on appeal that the jury lacked sufficient evidence to convict him and that the jury's verdict was against the manifest weight of the evidence. For the following reasons, however, Appellant's arguments lack merit and are overruled.
 {¶ 3} Appellant raises only one assignment of error:
 {¶ 4} "THE VERDICT OF THE JURY SHOULD BE REVERSED AS THE JUDGEMENT [SIC] OF THE JURY IS NOT SUSTAINED BY SUFFICIENT EVIDENCE NOR IS THE VERDICT SUSTAINED BY THE WEIGHT OF THE EVIDENCE."
 {¶ 5} Appellant challenges both the weight of the evidence and the sufficiency of the evidence presented at his jury trial. A challenge to the sufficiency of evidence differs from a challenge to the manifest weight. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential *Page 2 
elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 6} A claim that a jury verdict is against the manifest weight of the evidence is a much broader test:
 {¶ 7} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 8} On review, courts must be cognizant of the fact that the jury is in the best position to judge witness credibility and to weigh the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, 231,227 N.E.2d 212.
 {¶ 9} Further, in order to reverse a trial court's decision based on the weight of the evidence, all three judges on the court of appeals panel reviewing the case must unanimously concur. Thompkins at 389.
 {¶ 10} Turning to the evidence as found in the record, Captain Ron Cicone of the Mingo Junction Police Department testified for the state. On July 20, 2004, Cicone was on patrol and noticed two males with black swampy mud on their clothes. Cicone's attention was drawn to the two since one was carrying bolt cutters. Thereafter, a News 9 WTOV station employee stopped Cicone and indicated that she saw a silver SUV driving in the wooded area behind the television station. Cicone *Page 3 
returned to the area and stopped the two to investigate. They identified themselves as Kenneth Shepard and Jeff Beatty. Cicone's partner remained with the two men so Cicone could follow fresh mud tracks that led him to a silver Jeep Liberty parked under a tree. (Tr., pp. 40-41, 44.)
 {¶ 11} Joseph S. Buchmelter of the Steubenville Police Department testified regarding his role in the investigation. Buchmelter was a deputy sheriff with the Jefferson County sheriffs department. On July 20, 2004, he was contacted by the Mingo Junction police and advised that they had located a stolen Jeep. Buchmelter arrived at the scene of Cicone's investigation and placed both men in custody. He described Appellant's appearance as though he "had been rolling around in the mud." (Tr., pp. 45, 49.)
 {¶ 12} Buchmelter found a key in Shepard's back pocket, which was later determined to belong to the Jeep in question. On questioning, Shepard told Buchmelter that Appellant stole the Jeep. (Tr., p. 50.)
 {¶ 13} Gary Bickerstaff also testified for the State of Ohio. On July 20, 2004, he was in his yard when he heard noises that kept getting louder coming from the creek, which is about 100 yards from his house. Bickerstaff went down to the creek to investigate, and he saw a gray Jeep "hung up on * * * a creek bank." (Tr., pp. 51, 53.) He was about 20 feet away from the vehicle. Bickerstaff saw a young man standing in the creek bed attempting to push the Jeep. The driver also got out of the vehicle and began pushing. Bickerstaff saw that the two men were able to dislodge *Page 4 
the vehicle, so he returned to his home. Bickerstaff identified Appellant as one of the men in the Jeep. (Tr., pp. 52-53, 56.)
 {¶ 14} On cross-examination, Bickerstaff said that Appellant was wearing shorts and no shirt on the day in question. (Tr., pp. 55, 57.)
 {¶ 15} Matthew Flesher also testified. On July 20, 2004, Flesher heard noise coming from the creek behind Flesher Auto Salvage, so he went to the creek to investigate. He saw a Jeep driving through the creek and he watched as it got stuck. Flesher noticed that the Jeep had a dealer plate, which he was able to identify at trial. (Tr., pp. 59-60, State's Exhibit 1-A.)
 {¶ 16} Edward Laman, Chief of Police for Wintersville, Ohio, also testified for the state. He explained that on the day in question he was contacted by Buchmelter regarding two suspects he had secured and involving a stolen Jeep Liberty. The suspects were identified as Appellant and Kenneth Shepard. Laman interviewed Appellant, who said that he had been picking apples that morning behind the News 9 WTOV station in the Altamont Hill area. Appellant said that, by chance, his cousin, Shepard, was in the area. Appellant also stated that Shepard asked him to carry his bag of tools and that Shepard was carrying bolt cutters. (Tr., pp. 16-17, 20-21, 27.)
 {¶ 17} Laman described Appellant as covered in mud. Appellant explained that he was muddy because he had fallen while picking apples. However, Laman stated that Appellant's appearance was not consistent with merely falling down, since his pants and shoes were heavily covered in mud. Shepard was similarly covered in mud. (Tr., pp. 8, 28-30.) *Page 5 
 {¶ 18} Sam Davis, President of State Park Motors, testified that on July 20, 2004, a silver Jeep Liberty was missing from his used car dealership storage lot. The chain lock on the lot's gate had been cut and the link was lying on the ground. Davis identified state's exhibit A-1 as his dealership's license plate. The damaged vehicle was eventually returned to State Park Motors, and the repairs cost approximately $6,400. (Tr., pp. 34-37, 38.)
 {¶ 19} Kenneth Shepard also testified. He stated that on the night of July 19, 2004, he was with his cousin, Appellant. Shepard explained at trial that they left home that night with the intent to steal tires for Appellant's girlfriend's car. They went to State Park Motors and cut the chain on the fence. Although Shepard owned the tools in the bag and the bolt cutters, he said that Appellant actually cut the chain. (Tr., pp. 63, 65-67, 73.)
 {¶ 20} Once inside, they noticed that the cars had keys in them. They decided to take the Jeep Liberty, so they took a license plate off of another vehicle and put it on the Jeep. Appellant drove the Jeep off the lot, while Shepard drove Appellant's girlfriend's car. They later picked up Appellant's girlfriend and drove the Jeep to the creek. Both Shepard and Appellant took turns driving the Jeep. Shepard described how the vehicle got stuck in the creek and that they had to get out into the water to push it. As a result, the hood was bent, a turn signal and the side of the vehicle were damaged, and it was covered in mud. Shepard also recalled seeing two men watch them as they pushed the vehicle. Appellant was carrying the bolt cutters when they were stopped by the police. (Tr., pp. 68, 71, 72.) Appellant did not testify at trial. *Page 6 
 {¶ 21} Appellant argues on appeal that the evidence did not prove that he stole the Jeep. Instead, he claims the evidence supports a determination that Shepard stole the Jeep. Appellant claims that Shepard was lying at trial and that his multiple versions of the incident confirm this fact. Shepard explained at trial that he initially went along with Appellant's story that they had been picking apples that morning. However, Shepard says he then told the police the truth. It was brought out on cross-examination that Shepard gave several modified accounts of the incident. Appellant's counsel identified them as four different versions, and he pointed out the differences in these stories for the jury.
 {¶ 22} In one version, Shepard said an unidentified friend drove he and Appellant to the car lot that night. Shepard testified at trial that they drove Appellant's girlfriend's car to the lot. In another version, Shepard said that the two originally set out that night to steal a car. He testified at trial that they only intended to steal tires. In one version, Shepard said the bolt cutters belonged to his uncle, but at trial he said they were his. (Tr., pp. 74, 80, 85, 87-90.)
 {¶ 23} Shepard also admitted at trial that he had been convicted of theft twice in 2003. He was also convicted of receiving stolen property in 2003. As a result of the Jeep incident, Shepard was also convicted of theft, breaking and entering, vandalism, and possession of criminal tools prior to Appellant's trial. (Tr., pp. 78-79, 86.)
 {¶ 24} Based on this record, Appellant claims that Shepard's testimony wholly lacked credibility and did not support Appellant's convictions. However, the fact that *Page 7 
Shepard gave several versions of the incident in question was before the jury in some detail. It was also fully advised of Shepard's past criminal behavior. Thus, the jury was able to consider Shepard's inconsistent statements and criminal past in assessing his credibility as a witness. Since the jury was in the best position to judge his credibility, we cannot second guess their determination.Martin, supra, 20 Ohio App.3d at 175, 485 N.E.2d 717.
 {¶ 25} Turning to Appellant's breaking and entering conviction, R.C. § 2911.13(B) states in part, "[n]o person shall trespass on the land or premises of another, with purpose to commit a felony."
 {¶ 26} There was sufficient evidence to support Appellant's conviction on this charge. Shepard testified that Appellant cut the lock on the car lot fence and entered the lot with the intention of stealing tires. R.C. § 2911.13(B). There was no evidence to the contrary. This conviction was also not against the manifest weight of the evidence. Although Shepard was depicted as having a questionable and checkered history, his past was before the jury for consideration, and his testimony was generally consistent with the other witnesses'.
 {¶ 27} As for Appellant's theft conviction, it was also supported by sufficient evidence. R.C. § 2913.02 theft provides,
 {¶ 28} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: *Page 8 
 {¶ 29} "(1) Without the consent of the owner or person authorized to give consent;"
 {¶ 30} Shepard said Appellant drove the Jeep off the lot. Bickerstaff identified Appellant as one of the men with the vehicle in the creek. Further, Davis stated that this Jeep Liberty was stolen from his used car lot.
 {¶ 31} Appellant's theft conviction was also not against the manifest weight of the evidence since there was no evidence to the contrary presented at trial. R.C. § 2913.02.
 {¶ 32} R.C. § 2909.05, the statute regarding vandalism, states in pertinent part,
 {¶ 33} "(B)(1) No person shall knowingly cause physical harm to property that is owned or possessed by another, when either of the following applies:
 {¶ 34} "(a) The property is used by its owner or possessor in the owner's or possessor's profession, business, trade, or occupation, and the value of the property or the amount of physical harm involved is five hundred dollars or more;"
 {¶ 35} Appellant's vandalism conviction was also supported by sufficient evidence. Shepard stated that he and Appellant took turns driving the Jeep through the creek. Once it got stuck, they took turns pushing the vehicle. Shepard also described the damage they caused to the vehicle. Bickerstaff identified Appellant in the creek with the Jeep. Davis testified that the damage to the Jeep was approximately $6,400. Thus, the evidence supports a determination that Appellant knowingly caused physical harm to the stolen vehicle. *Page 9 
 {¶ 36} Again, since there was no evidence to the contrary, this conviction was not against the manifest weight of the evidence.
 {¶ 37} Regarding Appellant's conviction for possession of criminal tools, it too was supported by sufficient evidence. R.C. § 2923.24
possessing criminal tools states,
 {¶ 38} "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.
 {¶ 39} "(B) Each of the following constitutes prima-facie evidence of criminal purpose:
 {¶ 40} "* * *
 {¶ 41} "(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.
 {¶ 42} "(C) Whoever violates this section is guilty of possessing criminal tools. Except as otherwise provided in this division, possessing criminal tools is a misdemeanor of the first degree. If the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree."
 {¶ 43} Appellant was carrying the bolt cutters when they were stopped by the police, and Shepard explained that Appellant used them to cut the lock at the lot. Thus, it was established that Appellant had the bolt cutters with the purpose to use them criminally. R.C. § 2923.24(A). *Page 10 
 {¶ 44} This conviction was also not against the manifest weight of the evidence. Again, Shepard's criminal history and the fact that he told several versions of the incident were before the jury for its consideration. Nonetheless, the jury believed him.
 {¶ 45} Appellant also takes issue with the lack of physical evidence placing him inside the stolen vehicle. Contrary to his argument, however, physical evidence is not required to sustain a criminal conviction. State v. Battle (Aug. 11, 1993), 9th Dist. No. 15869, at 10, citing State v. Gingell (1982), 7 Ohio App.3d 364, 365, 455 N.E.2d 1066. There were several eyewitnesses placing Appellant in the area of the creek that day and one independent witness placing Appellant in the Jeep. Shepard testified that the two broke into the car lot and stole the Jeep Liberty. Thus, physical evidence placing him inside the vehicle was unnecessary.
 {¶ 46} Finally, Appellant claims that the independent witness' testimony was incredible. Specifically, Appellant takes issue with Bickerstaff s testimony, since he said that Appellant was wearing shorts on the day in question. This is contrary to Laman's testimony that Appellant was wearing long pants at the time. (Tr., p. 8.) Whether Bickerstaff saw Appellant in pants or shorts on the day in question is not outcome determinative. Bickerstaffs identification of Appellant as one of the two males in the stolen Jeep Liberty did not waiver. The fact that Bickerstaff did or did not know exactly what Appellant was wearing approximately eight months earlier goes to Bickerstaffs credibility and was before the jury. Thus, this argument lacks merit. *Page 11 
 {¶ 47} In conclusion, Appellant's sole assignment of error lacks merit in its entirety since his convictions were established by sufficient evidence. In reviewing the entire record, we also conclude that his convictions were also not against the manifest weight of the evidence. The jury did not lose its way and create a manifest miscarriage of justice. Thus, Appellant's convictions are hereby affirmed in full.
 Donofrio, J. and Vukovich, J., concurs. *Page 1