OPINION
{¶ 1} This matter is submitted to this court on the record and the briefs of the parties. Appellant, Deborah L. Long, appeals the judgment entered by the Portage County Court of Common Pleas. Following a jury trial, Long was convicted of receiving stolen property.
 {¶ 2} On May 18, 2006, Thomas Ingram visited his friend Charles Akers. At that time, Akers was living at Long's residence in Ravenna, Ohio. According to Ingram, he *Page 2 
smoked crack cocaine with Long and another woman. Then, Long and Ingram left the residence in search of more drugs.
 {¶ 3} When Long was purchasing more drugs at a nearby residence, Ingram noticed a woman enter the American Legion hall and leave her purse in her car. Ingram approached the car, found a rock, and broke one of the car's windows. The car belonged to Mildred Drayer. Ingram stole Drayer's purse and returned to Long's residence with the purse. Ingram testified that Long asked him if she could go through the purse with him. Long and Ingram went through the purse and Ingram testified that he tried, unsuccessfully, to add minutes to Long's cell phone with a credit card found in Drayer's purse.
 {¶ 4} Ingram testified that he stole "at least" two purses on the day in question. However, Long was only convicted of receiving stolen property in relation to Drayer's purse.
 {¶ 5} Ingram also found a gift card in Drayer's purse. Ingram and Long called an individual at a local motel, who agreed to trade crack cocaine for the gift card. When Ingram and Long were getting ready to leave to make the trade for the crack cocaine, Ingram noticed Ravenna police cars drive by Long's residence. Ingram suggested to Long that they should not take the stolen purses with them, so they hid the stolen purses in a laundry basket in the upstairs portion of Long's residence.
 {¶ 6} Ingram, Long, and another woman then got into a car to go get the drugs. However, as soon as they got into the car, a police car blocked their path.
 {¶ 7} Officer Kevin Lafferty of the Ravenna Police Department was working the afternoon shift on May 18, 2006. He had been briefed that there was a stolen car in the area, so he was looking for the car as he was conducting his shift. In addition, he had *Page 3 
received a radio call that a purse was stolen from a car at the American Legion. When Officer Lafferty was driving on Walnut Street, a child approached his vehicle and asked him if he was looking for a man who came running by with a purse. The child informed Officer Lafferty of the direction the individual with the purse went. Officer Lafferty went to that area and found the suspected stolen vehicle parked on Clinton Street near Poplar Street. The vehicle's tires were on the lawn of the property where Long resided.
 {¶ 8} Officer Lafferty confirmed the vehicle was stolen by running the license plate number through the statewide computer database. At that point, he was directed to watch the car from a distance to see if anyone attempted to get into it. Officer Lafferty then saw Ingram and two females leave Long's residence and get into another car. Another officer blocked the path of the car with his police cruiser.
 {¶ 9} Officer Lafferty knew Ingram from prior encounters. Ingram had active warrants for his arrest, so he was arrested by Officer Lafferty. Officer Lafferty then spoke to Long, who was in the driver's seat of the vehicle. He advised Long that Ingram was a suspect in the theft of a purse at the American Legion hall and asked her for permission to search her residence. Long consented to a search of her residence.
 {¶ 10} Before the officers entered her residence, Long went inside to secure her dog, a large Rottweiler. Long secured the dog by shutting him into the upstairs portion of the residence. The officers searched the downstairs portion of Long's residence and did not find anything of significance. The officers asked Long if they could search the upstairs portion of the residence. At first, Long was reluctant to give the officers permission to search upstairs, saying that her dog did not like strangers and she did not want the officers to get bit. Eventually, however, she agreed to a search of the upstairs portion of her residence and secured the dog to allow the officers to conduct the search. *Page 4 
In a laundry basket upstairs, Officer Lafferty found two purses underneath a blanket. He opened one of the purses and discovered it belonged to Drayer.
 {¶ 11} Long was indicted on three counts of receiving stolen property, in violation of R.C. 2913.51. All three counts were charged as fifth-degree felonies, due to the allegation that some of the stolen property received were items listed in R.C. 2913.71, to wit: checks.
 {¶ 12} Long pled not guilty to the charges against her, and a jury trial was held. The state presented testimony from Ingram; Drayer, the alleged victim of Count 1 of the indictment; Detective Cooper; and Officer Lafferty. The alleged victims of Counts 2 and 3 of the indictment did not testify. Following the state's case-in-chief, Long moved for acquittal pursuant to Crim. R. 29. The trial court granted Long's motion regarding Counts 2 and 3 of the indictment, but it denied her motion in relation to Count 1 of the indictment. Long presented testimony from John Morrison. Morrison is Long's employer, and he testified that Long was working on the day in question.
 {¶ 13} The jury found Long guilty of receiving stolen property, including the element that part of the stolen property received were checks.
 {¶ 14} Long filed a motion for a new trial. Part of the basis for this motion was Long's allegation that she was denied her right to a fair trial due to her allegation that the assistant prosecutor made a comment about her failure to testify during his closing argument. Long attached an affidavit from her trial counsel, Attorney Alexander Folk, to her motion. In his affidavit, Attorney Folk states that, following trial, he spoke to one of the jurors, who informed him that her decision in the case may have been different if Long had testified. The trial court held that the affidavit was inadmissible, because it *Page 5 
violated the aliunde rule. The trial court denied Long's motion, holding that she had not demonstrated that she was denied her right to a fair trial.
 {¶ 15} The trial court sentenced Long to a two-year term of community control.
 {¶ 16} Long raises two assignments of error. These assigned errors will be addressed out of numerical order. Long's second assignment of error is:
 {¶ 17} "The verdict of the jury was against the manifest weight and the sufficiency of evidence."
 {¶ 18} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 19} Long was charged with receiving stolen property, in violation of R.C. 2913.51, which provides, in part:
 {¶ 20} "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 {¶ 21} "* * *
 {¶ 22} "(C) Whoever violates this section is guilty of receiving stolen property. Except as otherwise provided in this division, receiving stolen property is a misdemeanor of the first degree. If the value of the property involved is five hundred dollars or more and is less than five thousand dollars, if the property involved is any of *Page 6 
the property listed in section 2913.71 of the Revised Code, receiving stolen property is a felony of the fifth degree."
 {¶ 23} Ingram testified that he stole the purse from a car parked at the American Legion hall. Drayer testified that her purse was stolen out of her car, which was parked at the American Legion. Ingram testified that he took the purse to Long's residence; that he and Long went through the purse at Long's residence; and that he and Long hid the purse in a laundry basket in the upstairs portion of Long's residence. Officer Lafferty found Drayer's purse in a laundry basket in the upstairs portion of Long's residence. Thus, the state presented sufficient evidence for a trier-of-fact to conclude that Long received Drayer's purse, which was stolen property.
 {¶ 24} Long argues the state failed to present sufficient evidence that Drayer's purse contained checks. Long was charged with a felony enhancement of receiving stolen property set forth in R.C. 2913.71, which provides, in part:
 {¶ 25} "Regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02 or 2912.51 of the Revised Code is a felony of the fifth degree if the property involved is any of the following:
 {¶ 26} "* * *
 {¶ 27} "(B) A printed form for a check or other negotiable instrument, that on its face identifies the drawer or maker for whose use it is designed or identifies the account on which it is to be drawn, and that has not been executed by the drawer or maker or on which the amount is blank[.]" *Page 7 
 {¶ 28} Long argues that her conviction is not supported by sufficient evidence because the state did not introduce the physical checks that were in Drayer's purse when it was stolen. We disagree.
 {¶ 29} "[P]hysical evidence is not required to sustain a criminal conviction." State v. Beatty, 7th Dist. No. 05 JE 13, 2007-Ohio-1392, at ¶ 45, citing State v. Battle (Aug. 11, 1993), 9th Dist. No. 15869, 1993 Ohio App. LEXIS 3995, at *11, citing State v. Gingell (1982),7 Ohio App.3d 364, 365. In State v. Beatty, the defendant was convicted of several crimes, including theft of a motor vehicle. Id. at ¶ 1. On appeal, he argued there was no physical evidence placing him inside the stolen vehicle. Id. at ¶ 45. In affirming the appellant's convictions, the Seventh Appellate District noted that an independent witness, as well as the co-defendant, both testified that the appellant was in the stolen vehicle. Id. Thus, the lack of physical evidence was not fatal to the state's case. Id.
 {¶ 30} In this matter, Drayer testified that her checkbook, which contained a book of individual checks, was in her purse when it was stolen. Ingram testified that he saw a checkbook in Drayer's purse when he was going through it with Long. Officer Lafferty testified that he found Drayer's checkbook in her purse after it was recovered from Long's residence. He testified that he logged the checkbook into evidence and another officer returned the checkbook to Drayer. Finally, Drayer testified that her checkbook was returned to her by the police. The combined testimony of these witnesses was sufficient for a trier-of-fact to conclude that Drayer's checkbook was in her purse when Long received the stolen purse from Ingram. Accordingly, the introduction of the physical checks themselves "would have merely bolstered the state's witnesses' direct testimony." See State v. Reine, 4th Dist. No. 06CA3102, 2007-Ohio-7221, at ¶ 25. *Page 8 
 {¶ 31} The evidence presented by the state, when viewed together and in a light most favorable to the prosecution, was sufficient for a trier-of-fact to conclude that Long committed the offense of receiving stolen property beyond a reasonable doubt.
 {¶ 32} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 33} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 34} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Also, in assessing the witnesses' credibility, the jury, as the trier-of-fact, had the opportunity to observe the witnesses' demeanor, body language, and voice inflections. State v. Miller (Sept. 2, 1993), 8th Dist. No. 63431, 1993 Ohio App. LEXIS 4240, at *5-6. Thus, the jury was "clearly in a much better position to evaluate the credibility of witnesses than [this] court." Id.
 {¶ 35} Long asserts that Ingram was not a credible witness due to his extensive criminal record. Ingram testified that he had nine or ten prior felony convictions. In addition, on the day in question, Ingram testified that he smoked crack cocaine and stole at least two purses. While these factors may have indicated that Ingram was less credible, there are factors that suggest he was credible. Ingram testified Long went *Page 9 
through the purse with him; however, his testimony did not shift all of the blame to Long or minimize his involvement in the situation. Instead, Ingram admitted that he stole the purse. Also, Ingram testified that there was no deal between himself and the state for his testimony against Long. In light of the foregoing, the jury was free to believe Ingram's testimony.
 {¶ 36} The only defense witness to testify was Morrison. Morrison testified that he dropped Long off at her residence at approximately 5:00 p.m. on May 18, 2006.[1] He testified that there were two men at Long's residence and Long asked who was coming out of her house. Morrison testified that Long got out of his truck, and he drove away.
 {¶ 37} Morrison's testimony that Long was working on the day in question conflicted with Ingram's testimony that Long was with him doing drugs that day. The jury had an opportunity to observe each of these witnesses and determine which was more credible. State v. Miller, supra, at *5-6.
 {¶ 38} The jury did not lose its way or create a miscarriage of justice by finding Long guilty of receiving stolen property.
 {¶ 39} Long's second assignment of error is without merit.
 {¶ 40} Long's first assignment of error is:
 {¶ 41} "The appellant was denied a fair trial when the prosecutor made reference in closing argument that appellant did not testify."
 {¶ 42} Long contends the state committed prosecutorial misconduct by making improper comments during closing argument. *Page 10 
 {¶ 43} "We note that counsel is to be given latitude during summation. [State v. Woodards (1966), 6 Ohio St.2d 14, 26.] In addition, prosecutorial misconduct will not be a ground for error unless the defendant is denied a fair trial. [State v. Maurer (1984),15 Ohio St.3d 239, 266.]" State v. David, 11th Dist. No. 2005-L-109, 2006-Ohio-3772, at ¶ 66.
 {¶ 44} The state's rebuttal closing argument was:
 {¶ 45} "[By the assistant prosecutor]: Person associated with Thomas Ingram was [Long.] Sometimes you run with dogs you get fleas. That is what happened. Something else, [Long] never told the police —
 {¶ 46} "[Defense counsel]: Objection.
 {¶ 47} "[Assistant prosecutor]: — — I just got home from work.
 {¶ 48} "[Defense counsel]: Objection.
 {¶ 49} "THE COURT: Sustained.
 {¶ 50} "[Assistant prosecutor]: And why involve her? She involved herself. She's in the car with him. She's getting ready to leave the driveway. Does she say: I just got home from work, I don't know who he is. I don't know anything about the car, I don't know nothing.
 {¶ 51} "She doesn't say that is when him and Charlie Akers came over, my roommate, my buddy, my friend. She's now cooperating, she's cooperating because she's scared. Bottom line comes down to this, he's in her house, stolen car in her yard. Three stolen purses in her laundry basket. Her house, her laundry basket, it's her responsibility.
 {¶ 52} "Thank you." *Page 11 
 {¶ 53} Initially, we note this court has held that an assistant prosecutor may "`comment upon the evidence in [a] closing argument and to state the appropriate conclusions to be drawn therefrom.'" State v.Scheidel, 165 Ohio App.3d 131, 2006-Ohio-195, at ¶ 35, quoting State v.Kish, 11th Dist. No. 2001-L-014, 2002-Ohio-7130, at ¶ 52. The following colloquy occurred during the direct examination of Officer Lafferty:
 {¶ 54} "Q. Did [Long] ever tell you that she didn't know how [the purse] got there because she wasn't home?
 {¶ 55} "A. I don't remember that.
 {¶ 56} "Q. Did she ever tell you she worked all day, she couldn't possibly know what happened at her house that day?
 {¶ 57} "A. No, I — — I don't remember that at all.
 {¶ 58} "Q. She never mentioned she was at work and didn't know anything about the situation?
 {¶ 59} "A. No."
 {¶ 60} Thus, the assistant prosecutor was commenting on a matter that was in evidence. We note that Long did not object to Officer Lafferty's testimony about what Long did not tell him.
 {¶ 61} It is error for a police officer to testify about a defendant's post-arrest silence. State v. Treesh (Oct. 16, 1998), 11th Dist. No. 95-L-057, 1998 Ohio App. LEXIS 4886, at *102-103, quoting State v.Rowe (1993), 92 Ohio App.3d 652, 670. However, on appeal, Long does not object to Officer Lafferty's testimony.
 {¶ 62} The assistant prosecutor should not have elicited testimony from Officer Lafferty regarding Long's lack of comments to him or commented on this evidence during summation. However, the trial court properly sustained Long's objection to the *Page 12 
assistant prosecutor's comments during the rebuttal phase of closing argument. Moreover, the trial court instructed the jury that Long has a right not to testify and that they were not to consider the fact that she did not testify. Finally, upon a review of the entire record, we do not believe Long was denied a fair trial as a result of this comment.
 {¶ 63} Long's first assignment of error is without merit.
 {¶ 64} The judgment of the trial court is affirmed.
DIANE V. GRENDELL, P.J., MARY JANE TRAPP, J., concur.
[1] While Ingram testified that he stole Drayer's purse between 2:00 and 3:30 p.m., Officer Lafferty testified that the crime occurred at approximately 6:30 p.m. Thus, it was possible for Long to have gone through Drayer's purse with Ingram, even if she did not arrive at her residence until 5:00 p.m. *Page 1